**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| ROOSEVELT GLENN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:10-CV-351 |
| ) | |
| YVETTE SALINAS, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus By a Person in State Custody Pursuant to 28 U.S.C. § 2254, filed by Petitioner, Roosevelt Glenn, through counsel, on September 10, 2010 (DE #1). For the reasons set forth below, the petition is **DISMISSED WITH PREJUDICE** as untimely.

BACKGROUND

In 1993, Roosevelt Glenn was convicted of rape in Lake County, Indiana, and sentenced to 36 years in prison.[1] *See State v. Glenn*, 45G01-9001-CF-003. On direct appeal, the Indiana Court of Appeals set forth the facts regarding Glenn's conviction as follows:

> At approximately 1:00 a.m. on December 7, 1989, several men in a light green 1973 Pontiac Catalina bumped into

---

[1] In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct. *See* 28 U.S.C. § 2254(e)(1). It is Glenn's burden to rebut this presumption of correctness with clear and convincing evidence. *Id.*

Jill Martin's automobile as she drove south on I-65 in Lake County. Martin pulled over to the side of the road, but remained in her car with the engine running. The driver and two other men exited the green Pontiac and approached her car, asking whether she was all right. When a pickup truck pulled up behind Martin's car, the men sped away. Martin noted the license plate number of the car and later identified it as belonging to Gary Daniels.

Approximately one-half hour later, a light green Pontiac rear-ended or bumped M.W.'s car. M.W. exited her vehicle to inspect it for damage. Darryl Pinkins approached her and inquired whether she was all right. Then he grabbed her and, with the help of Glenn and another man, dragged her back to the green Pontiac. Glenn held the victim down in the back seat and told her, "Don't look at us, bitch. We'll kill you." . . . Glenn gave the victim his green coveralls from work to put over her eyes. Then Glenn undressed her and, despite her protestations that she had just suffered a miscarriage, raped her. After ejaculating on the victim's stomach, Glenn used the sleeve of her ski jacket to wipe off both their genital areas. During the next two hours, four other men in the car brutally raped and sodomized M.W.

Later, the men took M.W. back to her car. As another vehicle approached, they began throwing her clothes at her and threatened to kill her and her husband if she went to the police. M.W. still had the green coveralls used to cover her eyes during the assault. After telling her husband about the incident, M.W. informed the police and submitted to a rape kit. As a result of the attack, she hemorrhaged vaginally for three weeks and ultimately suffered a miscarriage.

After severing his case from that of his co-defendants, Glenn's first trial ended in a mistrial due to a deadlocked jury. At his second trial, however, Glenn was convicted of Rape, a class A felony. . . . The trial court sentenced him to thirty-six years of imprisonment.

*Glenn v. State*, No. 45A03-9307-CR-244, slip op. at 2-3 (Ind. Ct. App. Aug. 29, 1995) (internal footnotes and citations omitted).

Glenn appealed, challenging his conviction and sentence on

2

numerous grounds. *Id.* at *3-4. In August 1995, the Indiana Court of Appeals affirmed Glenn's conviction and sentence in all respects. *Id.* at *4-13. Glenn did not seek review in the Indiana Supreme Court. (*See* DE #13-2.)

On November 14, 2003, Glenn filed a petition for post-conviction relief. (DE #13-1 at 2.) The Indiana Public Defender filed an appearance on his behalf, and in the course of the post-conviction proceedings he amended his petition three times. (DE #13-6.) In November 2004, Glenn filed a motion seeking DNA testing of a hair taken from the victim's sweater, which was presented as evidence at trial as likely belonging to him. (*Id.* at 5.) The results of the DNA test showed that the hair did not belong to Glenn. *Glenn v. State*, No. 45A05-0808-PC-462, slip op. at *6 (Ind. Ct. App. Apr. 22, 2009). Glenn argued, among other claims, that the new DNA hair evidence warranted a new trial; that his due process rights were violated by the admission of the hair and blood evidence presented at trial, which he claimed was false and misleading; and that his trial counsel was ineffective in failing to properly refute the hair and blood evidence presented at trial. *Id.* at *2, 5-7. After two evidentiary hearings, the trial court denied the petition. *See id.* at *5-10.

Glenn appealed, and the Indiana Court of Appeals affirmed the denial of post-conviction relief. *Id.* at *10-27. The court concluded that, given the other evidence in the record, the DNA

3

evidence would not be likely to produce a different result at trial. *Id.* at *10-24. The court also concluded that, in light of the science known at the time of trial, the state's hair and blood evidence was not false or misleading, and thus Glenn's due process rights were not violated in connection with this evidence. The court further concluded that Glenn's counsel did not provide ineffective assistance in connection with this evidence. *Id.* at *24-26. Glenn sought transfer to the Indiana Supreme Court, which was denied. (DE 13-7 at 7.)

On September 10, 2010, Glenn filed this federal petition through counsel, raising the following claims: (1) his due process rights were violated by the admission of hair and blood evidence the state knew or should have known was "false and misleading"; and (2) his trial counsel provided ineffective assistance in connection with the admission of this evidence. (DE #1 at 4-7.)

DISCUSSION

Glenn's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under the AEDPA, habeas corpus petitions are subject to a strict one-year statute of limitations, stated as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the

4

>       latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The respondent argues that Glenn's petition is untimely by several years. (DE #14 at 6-12.) As the Respondent points out, because Glenn's conviction became final prior to the enactment of the AEDPA, he had until April 24, 1997, to pursue federal habeas relief. *Newell v. Hanks*, 283 F.3d 827, 832-33 (7th Cir. 2002). Glenn filed this petition in 2010, some 13 years after that deadline. Although the limitations period is tolled during the

5

pendency of a properly filed post-conviction relief petition, the federal deadline expired long before Glenn sought post-conviction review in 2003. Therefore, the state post-conviction proceeding is "irrelevant" for statute of limitations purposes. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009).

In an effort to avoid dismissal, Glenn claims that his petition is timely under the provisions of 28 U.S.C. § 2244(d)(1)(D). (DE #1 at 7; DE 18.) Specifically, he asserts that the factual predicate for his claims, "the necessary science—was not available and reliable until around 2003 such that the applicable 1-year statute of limitations for filing this Petition should not be deemed to have started to run until that time." (DE #1 at 7.) The Court agrees with the respondent that this argument is flawed in several respects.

First, a careful review of the petition reveals that the DNA test results are not the factual predicate for either of Glenn's claims. Glenn's first claim is that his due process rights were violated by the admission of the hair and blood evidence presented at his trial. (DE #1 at 4-5; DE #4-2 at 11-18.) As to the blood evidence, his claim is premised on the trial testimony of Kim Epperson, a serologist with the Indiana State Police who conducted DNA and serology tests on seminal fluid obtained from the victim's vaginal cavity, jacket, and sweater. *Glenn*, No. 45A05-0808-PC-462, slip op. at *13-15. In Glenn's view, Epperson's trial testimony

6

was misleading because she suggested that he could not be excluded as a source of the seminal fluid, even though DNA testing conducted at the time of trial did not detect his DNA profile in the stains.[2] Upon review, this claim is not premised in any way on the results of the DNA tests conducted on the hair evidence in 2004.

Similarly, Glenn's claim regarding the hair evidence is premised on the testimony of Dana Peterson, a hair comparison expert who conducted an analysis of a hair taken from the victim's sweater. At that time, hair comparison was performed by visually examining the hair evidence and comparing it to a hair sample taken from the defendant. (*See* Trial Tr. at 1354-70; PCR Tr. at 24-32.) Peterson testified that based on her analysis, the unique characteristics of the hair obtained from the victim's sweater suggested that it came from Glenn; she acknowledged, however, that unlike fingerprint evidence hair analysis was not definitive, and she could not say definitively that the hair did not come from someone else. (Trial Tr. at 1390-99.)

---

[2] Epperson conducted her own serological tests, which involved blood typing and enzyme typing, and also sent the samples out for DNA testing at a laboratory. The DNA testing detected two DNA profiles, neither of which matched Glenn's, and those results were presented at trial. However, Epperson testified that with DNA testing a larger quantity of fluid is needed to obtain a result; it was her view that based on the serological testing Glenn could not be completely excluded as a potential source of the stains. (Tr. at 1310-46, 2303-38.) At the post-conviction hearing, Glenn presented an expert who disagreed with Epperson's opinions regarding the serological testing. (PCR Tr. at 84-186.)

7

At the post-conviction hearing, Glenn presented the testimony of a hair comparison expert who took issue with the manner in which Peterson made her visual comparisons.[3] (PCR Tr. at 37-45, 69-71.) Based on his expert's opinion, Glenn claims that Peterson's analysis was faulty and misleading. (DE #18 at 2-5.) Although Glenn's claim relates to hair evidence, it is apparent that the claim is based on the evidence presented and available at the time of trial, not on the results of the DNA test performed nearly a decade after the trial was over.

Glenn's second claim is that his counsel was ineffective in failing to properly investigate and prepare so that she could uncover the above flaws in the state's expert testimony.[4] (DE #1 at 4-7; DE #4-2 at 11-12.) As explained above, Glenn's claim pertaining to the blood evidence is wholly unrelated to the subsequent DNA testing on the hair evidence. Furthermore, that aspect of the claim pertaining to the hair evidence is premised on evidence presented and available at the time of trial, not on the results of the DNA test performed nearly a decade later. For these

---

[3] Glenn's expert opined that, contrary to Peterson's testimony, the two hairs did not have sufficient visual similarities to be classified as "of common origin" under prevailing standards. (PCR Tr. at 37-45.) Nevertheless, he too concluded that based on a visual analysis the hair evidence was inconclusive and could not be ruled out as belonging to Glenn. (*Id.* at 69-71.)

[4] Glenn does not address his ineffective assistance of counsel claim in his traverse. (*See* DE #18.)

8

reasons, Glenn has not established that the factual predicate for either of his claims was unavailable until 2003.

Even if Glenn could show that his claims were premised on the new hair evidence he obtained in 2004, under 28 U.S.C. § 2244(d)(1)(D), a claim based on newly discovered evidence must be raised within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The Seventh Circuit has made clear that the time runs from the date the evidence could have been discovered through diligent inquiry, not when it was actually discovered or when its significance was realized. *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000).

Here, Glenn makes a vague assertion that the "necessary science" needed to obtain the new hair evidence "was not available and reliable until *around* 2003." (DE #1 at 7) (emphasis added). He offers nothing to substantiate his assertion that DNA testing was not available until 2003; in fact, at the post-conviction hearing his own expert testified that DNA testing was available and used in criminal proceedings as far back as the mid-1990s. (PCR Tr. at 149.) Furthermore, case law indicates that DNA testing of hair evidence was being conducted in Indiana as far back as 1999. *See Anderson v. State*, 718 N.E.2d 1101, 1102 (Ind. 1999). In response to the respondent's timeliness argument, Glenn again

9

offers only vague assertions about when the testing became available rather than pinpointing a date, stating that he pursued relief "[a]fter Mitochondrial DNA became known and accepted and as the science of DNA mixtures advanced." (*See* DE #18 at 7.) Glenn has failed to establish that 2003 is the earliest date he could have obtained the new hair evidence.

Glenn appears to argue that the Court should nevertheless review his claims on the merits because he is actually innocent of the offense. (*See* DE #18 at 2-5.) Glenn relies on *House v. Bell*, 547 U.S. 518 (2006), but this case governs review of a procedurally defaulted claim, not an untimely claim. Although a claim of actual innocence may provide a gateway for review of a procedurally defaulted claim, a claim of actual innocence does not excuse the failure to comply with time deadlines under the AEDPA. *Escamilla v. Jungwirth*, 426 F.3d 868, 872 (7th Cir. 2005) ("Prisoners claiming to be innocent, like those contending that other events spoil the conviction, must meet the statutory requirement of timely action.").

Even if there were some legal basis for excusing the untimeliness of Glenn's petition, such as through equitable tolling, Glenn has not proven his actual innocence. Under Supreme Court standards actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A prisoner asserting actual innocence must show that "in

10

light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 537. This is a difficult standard to meet, and such claims are "rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must support the claim of innocence "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* The reviewing court must consider all the evidence, old and new, and make a "probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id*.

Here, the DNA test results obtained in 2004 show that Glenn was not the source of a hair taken from the victim's sweater. However, this evidence does not exonerate him. As the Indiana Court of Appeals recounted, the state developed significant circumstantial evidence of Glenn's guilt, including testimony that substantially undermined his alibi defense; testimony from two inmates that Glenn made incriminating statements to them about his involvement in the offense; and evidence regarding a pair of coveralls one of the men gave to the victim to cover her face, which were traced back to Glenn through his employer. *See Glenn*,

11

No. 45A05-0808-PC-462, slip op. at *21-25. Additionally, the jury heard testimony from Glenn denying his involvement in the offense and from Glenn's alibi witness, and obviously found this testimony to be lacking in credibility. (*See* Trial Tr. at 1992-2132, 2365-2402.) Given the evidence in the record, the Court cannot conclude that it is more likely than not no reasonable juror would find Glenn guilty beyond a reasonable doubt.

For all these reasons, Glenn's petition must be dismissed as untimely. Because the petition must be dismissed, the Court does not reach the respondent's arguments that Glenn's claims are procedurally defaulted and/or fail on the merits. (*See* DE #14 at 12-40.)

As a final matter, pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted). As is fully explained above, Glenn's habeas petition is untimely by several years.

Nothing before the Court suggests that jurists of reason could debate the correctness of this procedural ruling, or find a reason to encourage him to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

CONCLUSION

For the reasons set forth above, the petition (DE #1) is **DISMISSED WITH PREJUDICE** as untimely.


DATED: August 3, 2011					RUDY LOZANO, Judge
								United States District Court